EPHRAIM MARSHALL *et al.*

*v.*

EDWARD C. SILLIMAN *et al.*

1. CONSTITUTION—*subscription to railroad stock.* An act authorizing a township to vote to subscribe for stock to a railroad, and to issue bonds in payment of the same, is allowable under the constitution of 1848.

2. SUBSCRIPTION FOR RAILROAD STOCK—*notice—conditions.* Where the requisite number of persons petition the supervisor to call an election for the purpose of voting whether the township shall subscribe for stock and issue bonds to pay therefor, and name a number of conditions of subscription, and the supervisor gives a notice without specifying any conditions, and the vote results in favor of subscription, the omission to specify the conditions in the notice will not invalidate the bonds.

3. ELECTION—*for two propositions on the same day.* Where a notice was given that a vote would be had on a particular day to vote for and against subscribing $35,000 to the stock of a railroad, and subsequently another notice was given for an election on the same day for another subscription to the same road, for another sum, both elections were legal. One did not invalidate the other.

4. But the latter sum being voted in a town meeting, without any authority, it was void, and conferred no power on the town authorities to issue railroad bonds. The law having limited the subscription to $35,000, the vote of the town meeting was wholly unauthorized.

5. VOID ELECTION—*curative law.* In case of such a void proceeding, the legislature has no power, under the constitution, to pass a law rendering the election and subscription valid. It would be to compel a municipal corporation to incur a debt for purely a local municipal purpose.

6. The legislature has no power to authorize a supervisor and town clerk to create a corporate debt without the consent of the people, as the power to impose taxes or to create a corporate debt is not incident to their offices. But even if such power existed under a curative act of this character, it will not be inferred that they exercised a discretion in making the subscription, but that they felt they were bound to do so under the requirements of the act. It gave those officers no choice to act or not, but declared the election valid and binding on the township, and declared the subscription might be collected.

7. The case of *Cowgill* v. *Long*, 15 Ill. 202, considered and distinguished.

8. TAX—*injunction.* In such a case, the tax levied to meet the interest on the bonds issued under the curative act should be enjoined, and if the bonds have not been negotiated, the railway company should be required to surrender them for cancellation.

9. ELECTION—*petition—notice.* The petition to the supervisor to call an election was without date, but the notice fixed a time and place for the election, which was a sufficient compliance with the law.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WEAD & JACK, for the appellants.

Messrs. HARDING & McCOY, and Mr. J. S. STEVENS, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court :

On the 5th of March, 1867, the legislature passed an act incorporating the Dixon, Peoria & Hannibal Railroad Company. The sixth section authorized townships through which the road might pass to take stock therein, not exceeding $35,-000 for each township. The question of subscription was to be submitted to a vote of the people, which was to be taken upon a petition, signed by twenty-five legal voters, being presented to the town clerk, who was thereupon to give twenty days notice of the time and place of holding the election.

Under this law, a petition was presented to the supervisor of Brimfield township, in the county of Peoria, dated July 9th,

220          MARSHALL *et al. v.* SILLIMAN *et al.*     [Sept. T.,

Opinion of the Court.

1868, signed by twenty-five legal voters, and asking that an election be held on the 3d of August following, to vote upon a subscription of $35,000 to the stock of the road. The petition proposed that the subscription should be upon condition that the road should be graded, bridged and tied within the limits of the town by January 1, 1871, and that the bonds should be issued, $15,000 when the road should be graded, and $20,000 when bridged and tied—the bonds to be payable in ten, fifteen and twenty years. The election was held and the vote was in favor of the subscription.

On the same day with this vote, another was taken, to determine whether the town should subscribe $15,000 in addition to the $35,000. The only authority for taking this vote was derived from the provisions in article 4 of the township organization law, in regard to special town meetings. This vote also resulted in favor of taking the additional stock.

On the 9th of March, 1869, the legislature amended the charter of the company and authorized towns to take stock to the amount of $100,000. Acting under this amendment, on the 13th of April, 1869, another petition for an election, signed by twenty-five voters, was presented to the supervisor, proposing an additional subscription of $25,000, with conditions somewhat similar to those annexed to the first petition. Notice was posted on the same day, and on the 4th of May the vote was taken with the same result as before, and subsequently the town issued its bonds for $75,000, and subscribed to the stock for that amount, being the total of all the sums for which a vote was taken.

The bill in this case was filed by certain tax payers of the town to enjoin the railway company from negotiating the bonds, and the county treasurer from collecting the taxes assessed for payment of interest. The taxes sought to be enjoined are the first that have been assessed for this purpose. On the hearing, the circuit court dismissed the bill.

Before considering separately the different proceedings upon which these bonds were issued, we will refer to one objection,

going to the validity of all the bonds. It is very earnestly argued that all acts of the legislature, giving to municipalities the power to take stock in railroad companies and issue bonds therefor, are unconstitutional.

In regard to this, we desire only to say that it can no longer be considered an open question in this court. As to the future, our new constitution has removed this subject from the domain of controversy. As to the past, the decisions of this court, beginning with the case of *Prettyman* v. *Tazewell County*, 19 Ill. 406, and repeated in numerous cases since that time, have solemnly affirmed the validity of these acts. Under these decisions, and in consequence of them, the counties, towns and cities of the State have issued bonds amounting, in the aggregate, to many millions, and these have gone into the hands of *bona fide* purchasers all over the commercial world.

If, under these circumstances, this court were to reverse its decisions, and thereby destroy the value of this immense amount of property, nay, if we were to treat the question as one admitting of discussion, we should show but a poor appreciation of the responsible duties of our office. If the question were a new one, we know not to which side our deliberations might incline us, but the highest considerations of justice require us to follow, unhesitatingly, decisions which have drawn after them consequences so important. They have the peculiar sacredness which attaches to decisions that have become established rules of property. Indeed, we could probably pronounce no judgment affecting the title to realty, that would cause such loss to persons acting on the faith of former decisions, as the one we are now asked to render.

The legislature can repeal a statute without disturbance of vested rights, for such repeal acts only upon the future. But a reversal of a judicial decision acts upon all the past, and sweeps away all the rights acquired upon faith in a rule declared by the court of last resort to be the law. Hence the doctrine of *stare decisis*, and no case could more cogently demand its application than the one before us. We decline,

therefore, to consider the argument upon this point, remarking, however, that the former decisions of this court are in accord with those made by the highest courts of almost every State in the Union.

We proceed to the consideration of these different votes.

There are but two objections taken to the vote for the $35,-000. They are, first, that the notice of the vote or election given by the supervisor did not specify the conditions above stated, named in the petition to him, signed by the twenty-five voters, on which they proposed to have the bonds issued; and, second, that the vote for the $15,000 was held at the same time. Neither of these objections has any validity. The law merely required the supervisor, upon petition, to give a notice, and this he did. It is true, the public might have inferred from the notice that the vote was to be upon the issue of bonds, without conditions for the protection of the township. If that were so, the effect would simply have been that more persons would be induced to go to the polls for the purpose of defeating the project than would have gone if the notice had specified the conditions. If the notice had specified them, and they had been subsequently disregarded, there might have been excellent ground of complaint. But the notice was in a form best adapted to draw out all the opposition to the proposed vote, and if the conditions were observed in issuing the bonds, as we presume they were, in the absence of objection on that ground, the tax payers have no cause for complaint. Their interests have been guarded in a greater degree than the notice of the vote indicated they would be, in case there should be a majority for subscription.

As to the other objection, we do not see what bearing the separate vote for the $15,000 had upon the vote for the $35,000, or how it affected the validity of the latter.

As to the vote for the $15,000, it is not claimed by counsel for appellees that it was valid at the time. The charter authorized $35,000, and only that sum, to be subscribed by the town, and the vote upon this was to be taken in a manner specially

pointed out.   That mode was adopted in reference to the vote for that sum.   But the vote for the $15,000 was simply a vote at a special town meeting, called on the application of twelve voters, under the general township organization law, which conferred no authority whatever on the township authorities to hold this election.   It was an utterly void proceeding.   The town had no power to take railway stock and issue railway bonds independently of legislative action, and this vote could give none.   The law limited the stock to $35,000.

It is, however, insisted by appellees, that an act of the legislature, passed April 17th, 1869, made the election and the bonds issued thereunder valid.   That act is as follows, and will be found in vol. 3 of Private Laws of 1869, p. 372:

"SECTION 1.  *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That a certain election held in the township of Brimfield, in Peoria county, on the third day of August, 1868, at which a majority of the legal voters in said township, in special town meeting, voted to subscribe for and take $15,000 of the capital stock of the Dixon, Peoria & Hannibal Railroad Company, over and above the amount authorized to be taken by the charter of said company, is hereby legalized and confirmed, and is declared to be binding upon said township, and may be collected from said township in the same manner as if said subscription had been made under the provisions of said charter."

This law, if valid, had the effect of creating a debt of $15,-000 against this township.   It declares that the subscription is binding, and may be collected from the township in the same manner as if it had been legally made.   Before the passage of this act, it was not binding, and could not be collected.   If it is now binding, it became so for the first time at the passage of this law, and is so solely by force of the law.

The question, then, whether the subscription is binding, does not depend merely upon whether the legislature can pass

224     MARSHALL *et al. v.* SILLIMAN *et al.*    [Sept. T.,

Opinion of the Court.

a retrospective law, but upon whether it can create a debt against a town, and require the town to assess a tax for its payment.

That this is the real question can not be denied. It can not be said that the town has ever consented to the creation of this debt. The so-called vote was an idle form. Persons opposed to the subscription were under no necessity or obligation to vote against it, because they had a right to regard the entire proceeding as a nullity. The vote can no more be accepted as the action of the town, or as giving the consent of the town to the creation of this debt, than would a resolution adopted by the same number of persons at one of their dwellings, or in a casual encounter at a street corner.

Neither can the subsequent issue of the bonds on the 5th of May, 1869, be taken as showing the assent of the town. That was the mere ministerial act of the supervisor and clerk, performed in obedience to the act of the legislature.

We come, then, to the question, whether the legislature can create a debt against a municipal corporation for municipal purposes, and subject it to a tax for its payment, without its consent.

Our new constitution expressly prohibits this for the future, and the decisions of this court substantially hold that it could not be done under the constitution of 1848.

The 5th section of the 9th article of the constitution of 1848 provides that, "the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

In *Harward* v. *The St. Clair & Monroe Levee Drainage Co.* 51 Ill. 130, we held this clause was an implied limitation upon the power of the legislature to grant the right of corporate taxation to any but the corporate authorities. In the subsequent case of *The People ex rel. etc.* v. *The Mayor of Chicago,* ib. 30, we went further, and held that, although there might

be cases where the legislature, without the consent of the corporate authorities, might impose taxes, local in their character, if required by the general good government of the State, because such taxes would not be for corporate purposes merely, yet the legislature could not compel a municipal corporation, against its own will, to issue bonds or incur a debt for a merely corporate purpose, like the creation of a public park, or other local improvement. In the last cited case, the precise question under consideration was fully considered, and it is unnecessary to repeat what was there said. See also *Hessler* v. *Drainage Com.* 53 Ill. 110, and *Lovingston* v. *Wider*, ib. 302.

These cases show it to be the settled doctrine of this court, that, under the constitution of 1848, the legislature could not compel a municipal corporation to incur a debt for merely local purposes, against its own wishes, and this doctrine, as already remarked, has received the sanction of express enactment in our existing constitution.

That was the effect of the curative act under consideration, and it was therefore void.

It is said, however, by counsel for appellee, that the legislature might have authorized the town supervisor, and town clerk, as the corporate authorities of the town, to subscribe to the stock of this road, and issue township bonds therefor, without a vote of the people, and that the curative act is to be considered as giving them that power, which they have duly exercised. The case of the *Town of Keithsburg* v. *Frick*, 34 Ill. 420, is cited in support of this position.

It was said in that case, that the legislature might grant that power to the trustees of a town, if it thought proper to do so, without taking a vote of the people. We do not dissent from that position, but it does not aid the appellees in the present case. The town supervisor and clerk, who issued these bonds, do not represent a township, as the board of trustees represent an incorporated town, or the common council represent a city. The supervisor and town clerk are but a part of the corporate authorities. They have no power of taxation, nor power, of

15—61ST ILL.

themselves, to bind the city in any way. The case of *Loving-ston* v. *Wider, supra,* may again be cited. We said there that the police commissioners were not the corporate authorities of East St. Louis, as they had not been elected by the people of the city, nor appointed in any manner to which the people had given their consent, and therefore the legislature could not give them the power of taxation, by creating a debt binding upon the city. So of the supervisor and clerk. Though elected by the people, they were not elected for the purpose of creating a debt or imposing a tax, and the legislature could not clothe these two officers, without the consent of the people, with a discretionary power of taxation or of creating a debt, because they are not, by themselves, the corporate authorities, in the sense of the constitution.

But even if these two officers could be recognized as the corporate authorities, they can not be said to have voluntarily incurred this debt on behalf of the town. The act gave them no discretion. It declares the subscription shall be binding, and may be collected. It did not authorize the corporate authorities to subscribe to the stock or not, as they should think proper, but declared that an illegal vote should be a valid subscription, and left to the town authorities only the ministerial function of executing the behest of the legislature.

Counsel for appellees claim that this case is like that of *Cowgill* v. *Long,* 15 Ill. 202. There is, however, a broad distinction. The tax, in that case, was a valid tax, and when the court say, in their opinion, that it was improperly voted in July, they evidently mean merely that it was improperly voted in that month, for the purpose of collection during the current year. The tax was legally imposed, and the only question decided by the court was, that the subsequent act of the legislature legalizing the steps by which the tax was illegally certified to the county court and placed in the course of collection during that year, was so far effectual that the tax could be collected by virtue of the act. The act dealt with a subject entirely under the control of the legislature, namely, the subject

of remedy.    The question before the court was very different from the ratification of a void tax by retrospective legislation, which the legislature could not, of its own power, impose prospectively.

Our conclusion is, that the so-called curative act was a violation of the constitution.    Its object was to compel this town to issue its bonds for railroad stock independently of its own wishes, and this was beyond the limits of legislative power. It sought to accomplish this by declaring that a void proceeding was a valid one; that a vote confessedly illegal was in fact legal.    But this vote was an accomplished fact.    Whether it was within the corporate powers of the town, and binding upon its people, was a question which no subsequent legislation could affect; and when the legislature undertook to say that this vote created a valid obligation against the town, when it did not, it was attempting, by its own act, to create a corporate debt.    So far as the tax was assessed for the payment of interest on the bonds for $15,000, which, we understand from the record, were a distinct issue, it should have been enjoined; and if the bonds have not been negotiated, the company should be required to surrender them.

The objections taken to the vote for the last subscription of $25,000 are not valid.    The town had, in the meantime, been authorized to subscribe to the amount of $100,000, and this last subscription was in substantial compliance with the law.

It is objected that the petition to the supervisor to call the meeting did not specify the day when the meeting should be called, as required by the law.    We consider that provision of the act as merely directory and immaterial.    If the notice posted by the supervisor set forth the time and place for holding the election, it was certainly of no consequence that the date was left blank in the petition.    It would be difficult to fix the day in that, as twenty-five signers had to be procured, which might be the work of considerable time.

As the petition was merely presented to the supervisor to authorize him to act, we can not discover any importance to be attached to the absence of a date for the meeting.   It was sufficient if stated in the notice.

We are of opinion the subscription and bonds were valid as to the $35,000 and the $25,000, but not as to the $15,000.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE WALKER:   I fully concur in all that is said in reference to the constitutional power of the. town to vote · the subscriptions; but, inasmuch as the present holders of the bonds are not parties to the bill, and as they have a direct interest in the tax sought to be enjoined, I think the decree of the court below should be affirmed for the want of parties.   I therefore refrain from the expression of any opinion as to the regularity or validity of the election, or the issue of the bonds, and think the decree should be affirmed.