## JOHN S. NEWBOLD ET AL.
## V.
## THE PEORIA AND SPRINGFIELD RAILROAD COMPANY
### ET AL.

1.    RAILROADS—RECEIVERS—EXCEEDING AUTHORITY.—A receiver is an officer of the court, acts under its orders and directions, and can do no act legally beyond that.    So, where a receiver of a railroad, was, by order of court, authorized to issue receiver's certificates to a certain amount, the proceeds to be used in operating the road, and to be paid out of the receipts of the road, an issue of certificates in excess of the amount ordered, was beyond the power of the receiver, and as to such excess the certificates were void even in the hands of an innocent holder, and constituted no claim upon the money in the hands of the receiver.

2.    EQUITABLE RELIEF—SUBROGATION.—The money arising from the sale of such over-issue, was used in payment of interest coupons due upon the mortgage bonds of the road, and this money having been advanced by the purchasers of such certificates, in good faith, relying upon the validity of the certificates, they should in equity be subrogated to the rights of the holders of such coupons as were paid from such fund, and upon the final distribution of the fund arising from the sale of the road under foreclosure, they should be paid their just proportion as the holders of such coupons.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding. Opinion filed January 7, 1880.

Messrs. CRATTY BROS. & ULRICH, and Messrs. JUDD & WHITEHOUSE, for appellants; that the corporation is estopped from alleging an issue in excess of the amount ordered, as against the rights of a *bona fide* holder for value, cited Knox Co. v. Aspinwall, 21 How. 159; Bissell v. City of Jefferson, 26 How. 298; Mercer Co. v. Hackett, 1 Wall. 93; Supervisors v. Schenck, 5 Wall. 783; Pendleton v. Amy, 13 Wall. 305; Lynde v. County, 16 Wall. 13; Marcy v. Oswego, 2 Otto, 637; Koouts v. Northern Bank, 16 Wall. 196; Humboldt Tp. v. Long, 2 Otto, 642; Bolton v. Board of Education, 1 Bradwell, 193; Coloma v. Eames, 2 Otto, 593; Warren v. Marcy, Monthly Jur. July, 1878; Merchants' Bank v. State Bank, 10 Wall. 644; Gal. R. R. Co. v. Cowdry, 11 Wall. 459; Moran v. Cours, 2 Black, 722; Maxcy v. Williamson Co. 72 Ill. 207; Hackett v. City of Ottawa, 11 Chicago Legal News, 240; Stanton v. Ala. etc. Ry. Co. 2 Woods, 523.

The receiver stands in place of the company and is liable, if in like case the company would be liable: Casper v. Hawkins, 8 West Va. 291; Klein v. Jewett, 26 N. Y. 474; Meara's Adm'r v. Holbrook, 20 Ohio St. 137; Blumenthal v. Brainerd, 38 Vt. 402; Paige v. Smith, 99 Mass. 395; Safford v. The People, 85 Ill. 558.

The receiver is an agent and the evil consequences of his acts, if any, should fall upon those who placed him in position to do the wrong: Garvin v. Wiswell, 83 Ill. 215; Gavagan v. Bryant, 83 Ill. 376; Stoner v. Milliken, 85 Ill. 218; How v. Nichols, 1 Salk. 289; Merchants' Bank v. State Bank, 10 Wall. 644.

Appellants were not bound to see to the appropriation of the money: Stanton v. Ala., etc. R. R. Co. 2 Wood 506.

An over-issue is an irregularity and does not go to the power to issue: N. Y. & N. H. R. R. Co. v. Schuyler, 34 N. Y.

Upon the question of negotiability: Stanton v. Ala., etc., R. R. Co. 2 Wood 506; McPherson v. Foster, 43 Iowa 48; Bank of Montreal v. C. C. Ry. Co. 48 Iowa 518; Mercer Co. v. Hackett,

1 Wall. 83; Woods v. Lawrence County, 1 Black, 386; Meyer v. Muscatine, 1 Wall. 385; Lee Co. v. Rogers, 7 Wall. 181; Grand Chute v. Winegar, 15 Wall. 356.

No change of ownership or possession can affect the rights of the parties: Clemens on Corporate Securities, 190; Stanton v. A. & C. R. R. Co. 2 Woods, 523.

The court can adjust equities so that no harm can be done by the misapplication of the funds by the receiver: Fosdick v. Schall, 11 Chicago Legal News, 216.

The doctrine of *lis pendens* does not apply to choses in action: Mead v. Orrery, 3 Atk. 235; Winston v. Westfeldt, 22 Ala. 760; McLourine v. Munroe, 30 Mo. 462; Baldwin v. Love, 2 J. J. Marsh, 489; County of Warren v. Marcey, 97 U. S. 96.

As to estoppel: DeWinton v. Mayor of Brecon, 26 Beav. 533; Stanton v. A. & C. R. R. Co. 2 Woods, 514; Bradley v. R. & W. R. R. Co. 40 Vt. 399.

As to priority of appellant's claim: Gardner v. Diedrichs, 41 Ill. 159; Flower v. Elwood, 66 Ill. 438; Sewall v. Brainard, 38 Vt. 364; Jones v. R. R. Securities, § 327.

Messrs. HOPKINS & MORRON, Mr. L. W. JAMES and Mr. WILLIAM F. BRYAN, for appellees; that the receiver had no authority to issue the certificates, cited Hooper v. Winston, 24 Ill. 353; High on Receivers § 180; McPherson v. Foster, 43 Iowa, 48; Marshall v. Silliman, 61 Ill. 218; Town of Elmwood v. Marcy, 92 U. S. 289; Bissell v. Kankakee, 64 Ill. 249.

The holders of these certificates will be presumed to have known that they were issued without authority, and therefore void: Marshall Co. v. Cook, 38 Ill 44; Schuyler Co. v. The People, 25 Ill. 181; Supervisors v. Clark, 27 Ill. 305; McClure v. Oxford, 94 U. S. 429; South Ottawa v. Perkins, 94 U. S. 260; Township v. Skinner, 94 U. S. 255; Pendleton Co. v. Amy, 19 Wall. 299; Kennicott v. Supervisors, 16 Wall. 452; St. Joseph v. Rogers, 16 Wall. 644; Coloma v. Eames, 92 U. S. 484.

The certificates are not negotiable: Nichols v. Davis, 1 Bibb. 490; High on Receivers § 186; Mooney v. B. C. L. Ins. Co .9 Abb. Pr. 103; Dawkes v. Deloram, 3 Wils. 207; Story on Prom.

Notes, § 22; Parsons on Bills, § 43; 1 Daniels on Negotiable Instruments, § 149; Janey v. Herle, 2 Ld. Raym'd, 1364; Wordin v. Dodge, 4 Denis, 154; Harriman v. Sanborn, 43 N. H. 129; Averitt v. Booker, 15 Grat. 163; Corbett v. State, 24 Ga. 287; West v. Foreman, 21 Ala. 400; Mills v. Kerykesdall, 2 Blackf. 48; McGee v. Larramor, 50 Mo. 425; Husband v. Epling, 81 Ill. 172; Baird v. Underwood, 74 Ill. 176; Kelly v. Hemingway, 13 Ill. 604; Smalley v. Edey 15 Ill. 324; Chitty on bills, 155; Stanton v. A. & C. R. R. Co. 2 Woods, 510; Bank of Montreal v. C. C. & W. R. R. Co. 7 Cent. Law Jour. 267.

Mr. B. S. PRETTYMAN and Messrs. BLOOMFIELD & HUGHES, for the railroad company; that the authority of the receiver is bounded by the decree of the court, cited Stanton v. A. & C. R. R. Co. 2 Woods, 516.

The certificates are not negotiable: Stanton v. A. & C. R. R. Co. 2 Woods, 516; Bank of Montreal v. C. C. & W. R. R. Co. 7 Cent. Law Jur. 267; Newell v. School Directors, 68 Ill. 516; Roberts v. Clelland, 82 Ill. 538; Reynolds v. Hines, 14 Cal. 667.

In a suit to foreclose a mortgage, such certificates are subject to the equities against the mortgage: Olds v. Cummings, 31 Ill. 189; Haskell v. Brown, 65 Ill. 29; Thompson v. Shoemaker, 68 Ill. 256; Bryant v. Vix, 83 Ill. 11.

LACEY, J. John S. Newbold, intervening petition, claim $10,000 and interest.

William P. Brock, intervening petition, claim $5,000 and interest.

Richard S. Brock, intervening petition, claim $5,000 and interest.

William W. Frazier, intervening petition, claim $5,000 and interest.

In the above causes of the several intervening petitioners, the record only of that of John S. Newbold is here presented; but by stipulation of all the parties, it is agreed that the intervening petition of John S. Newbold and the amendments thereto, and the answers and replications thereto are of the same substance

as of all the other named intervening petitioners, in so far as they set forth the fact and circumstances of the sale, transfer or negotiation of said certificates, so that the consideration of one will present the same facts and fact of sale as the consideration of each of the others, and that the cause of John S. Newbold may be heard and determined by the Appellate Court without full copies or transcripts of the other three intervening petitions, or of the pleadings therein.

The fact of the existence of the trust deed against the P. & S. R. R. Co., the commencing of the suit by S. H. Thompson, the appointing of James Haynes, receiver, the orders of court authorizing him to borrow money, the appointing of John R. Hilliard, receiver, the order of the court authorizing him to borrow money and issue receiver's certificates, and the action of William Dennison in filing his cross-bill, are all set out by the stipulation of the parties as follows: That the P. & S. R. R. Co. was a corporation under the laws of Ills., built from Peoria to Pekin, was authorized to, and did issue bonds, secured by deed of trust to Dennison, on all its property, to the amount of $600,-000; that May 22, 1875, S. H. Thompson, claiming to be the owner of five $1,000 bonds upon which interest was due and unpaid, filed the original bill in this case asking for the appointment of a receiver; that James Haynes was duly appointed receiver for all the property of the road, that upon the application of the receiver the court made an order authorizing him to borrow $20,000 for certain purposes specified; that afterwards the court upon like application of the receiver made a further order, authorizing the receiver Haynes to borrow $34,646, including the sum of $20,000 already ordered for like purpose of repairing, improving and bettering the road, and other purposes not including the payment of interest on the mortgage bonds of the road, the loan to be on not less than one, nor more than five years, time, interest not to exceed ten per cent.; that he execute and deliver to the person from whom the money was borrowed receiver's certificates; that the money borrowed by the receiver, under the order, was made a lien upon the income, revenues, earnings and all the property of the road after deducting therefrom operating expenses; that the receiver, as soon as the money was borrowed, report the same to the court.

June 10, A. D. 1876, James Haynes, resigned and John R. Hilliard was appointed his successor on motion of William Dennison, trustee.

Nov. 18, 1876, on motion of Hilliard, the receiver, an order was made by the court authorizing the latter to borrow $100,000 for the purpose of paying former indebtedness incurred for the repairs of the road, etc , and making the certificates a lien on the property of the road, the same as the first order; that Jan'y 2, 1877, Dennison, as trustee, filed his cross-bill praying the foreclosure of the trust deed and the payment of all the $600,000 bonds and interest; that after Dennison resigned, William F. Bryan was appointed by the court his successor as trustee; that the latter, Oct. 28, 1878, filed his supplemental and amended cross-bill; that Feb. 28, 1879, final decree of foreclosure was rendered.

The order of the court authorizing the issuing of the second series of James Haynes' receiver's certificates was printed in full on the back of each said certificates, and the form, which was a part of the order, was also printed on the back, which was in substance that " James Haynes, receiver, etc., do hereby certify that there is due unto          on account of          and that the same is payable to said          or order on or before the day of          A. D. 187 , with interest thereon at the rate of   per cent. per annum from date until paid, that it was issued by order of court, and that a copy of such order was printed on the back."

The receiver's certificates in question issued by John R. Hilliard were by the order of court required to be the same in form substantially as the above, and the form as well as the order of court was printed at large on the back of such certificates.

It appears from the master's report that James Haynes was the President of the P. & S. R. R. Co. as well as receiver; that B. E. Smith was the financial agent of Thompson, Griggs & Co., who were the contractors to build, and who built the road, and were heavy bondholders therein; that the coupons on the $600,000 bonds of the Peoria and Springfield R. R. Co. were about to become due on the 1st of April, A. D. 1876, and there were no funds in the hands of the railroad company to pay

them. It appears that on the 22d day of March, A. D. 1876. James Haynes had already issued his receiver's certificates to the amount of $39,000 for purposes named in the order, besides large amounts in addition, which he had issued as collateral to other indebtedness which he had contracted, and had already exceeded the $34,646 which he was authorized by the court to issue; that by agreement between the receiver and B. E. Smith, the receiver on the 23d day of March, A. D. 1876, issued five receiver's certificates for $5,000 each and delivered them to said Smith, who was to take them East and negotiate them and use the proceeds to pay off the maturing coupons on the railroad bonds.

. The certificates purported to be for borrowed money, and were in the form prescribed by the court and payable to the order of Thompson, Griggs & Co. These certificates B. E. Smith took to Philadelphia and there, representing himself as the authorized agent of Mr. Haynes, the receiver, for the negotiation of the certificates, sold them for full value to W. H. Newbold's Sons & Co., bankers and brokers, for $24,750 in cash; that subsequently, the several petitioners became the purchasers from Newbold's Sons & Co. of their certificates.

It appears that Newbold's Sons & Co. in their negotiations acted in good faith, and had no reason to mistrust the validity and regularity of the certificates, or the authority of Mr. Smith to negotiate them.

Mr. Haynes never reported to the court or master the issuance of these certificates. It appears that Hilliard, the new receiver, without order of the court, except the general order above set forth, which did not authorize the payment of the Haynes' certificates held by Newbold's Sons & Co., issued certificates to the holders of the Newbold's Sons & Co.'s certificates, and paid the interest on the Haynes' certificates, amounting to $2,561.25, and took them up. This was done March 26, 1877. His action in this matter has never been approved by the court, and the new certificates were payable to Thompson, Griggs & Co. or order, dated Feb. 24, 1877, and due March 23, 1878, drawing ten per cent. interest.

It further appears, that with the proceeds of the certificates

sold by Smith, he paid and took up 541 coupons falling due April 1st, A. D. 1876.

It further appears, from the testimony of B. E. Smith, that by an arrangement with Dennison and himself, the 29 coupons attached to the Neil bonds were considered paid, and should have been delivered to him, Smith,—that the latter retained the money. He also retained the money for 20 coupons belonging to Thompson, Griggs & Co. called the Pekin bonds. Smith paid McKee one coupon by giving his note and retaining the money. The original petition asked the full payment of the amount of the said certificates out of the moneys in the hands of the receiver and the moneys coming into his hands and from the proceeds arising from the sale of the property in the hands of the receiver, to the exclusion of the payment of all other claims except costs and expenses.

The amended petition shows that the money received from certificates sold to Newbold's Sons & Co. was paid and used by Smith in taking up the coupons due April 1st, 1876, on the $600,000 bonds, and that upon equitable grounds the full amount so paid should be refunded to the holders of the certificates.

The court below decreed that the prayers of the intervening petitions and the amendments thereto be denied and gave judgment against the petitioners for costs.

The petitioners assign such action of the court for error. It is claimed in argument by counsel for the petitioners that as the certificates of the receiver Haynes purchased by Newbold's Sons & Co. were negotiable, and that having been purchased in good faith and without any knowledge on the part of the purchasers that they were issued without authority by Haynes, it was binding on the court below to pay them out of the property and moneys in the hands of the receiver, or to come into his hands, to the exclusion of the claims of the bondholders.

We cannot adopt this reasoning. It appears that these certificates were issued by receiver Haynes without any authority of the court and in excess of the amount allowed by the court to be issued.

The receiver is an officer of the court and acts under its order

and directions and can do no act legally beyond that. High on Receivers, Chap. 8, and cases cited. With the issue of the amount of receiver's certificates allowed by the order of the court, the power of the receiver ceased and the form in which the certificates were issued, could make no difference and could not aid their validity.

It has been held by the Supreme Court of our State in a case somewhat analogous in principle to this, that municipal bonds issued by town officers in excess of the amount allowed by the act under which they were issued are void, even in the hands of an innocent purchaser. Marshall v. Silliman, 61 Ill. 218; Town of Elmwood v. Marcy, 92 N. S. 289; McPherson v. Foster, 43 Ia. 48.

The judicial department is a co-ordinate branch of the government with the legislative. The circuit court cannot be the agent of any litigant party. It must do equity between all parties nor can its officers and agents do any acts without its authority, that will compel it to make decisions and render decrees that it would not otherwise do. It should remain free and untrammeled, to at all times do justice according to the laws of the land. If the court could be compelled to pay these certificates, then the receiver could. by selling enough fraudulent certificates, dispose of the whole estate in the control and custody of the court; the court in such case would cease to be a free agent. Its adjudications would depend on what the receiver might do.

It is not within the policy of the law to allow receivers, who have been authorized to borrow money by order of court, by fraudulent action to usurp its functions.

The court should retain its rightful authority and allow or disallow claims according to the rules of equity. The receiver's certificates in question are negotiable in form and would pass from hand to hand by indorsement, so that the holder would be entitled to payment subject to all equities existing against them at the time they were issued. The orders of school directors, under the laws of this State, are negotiable in the same way, but not in the sense that commercial paper is negotiable Newell v. School Directors, etc. 68 Ill. 514. It has been

held that receivers' certificates are not generally negotiable. Stanton et al. v. A. C. R. R. Co., 2 Wood 510; Bank of Monreal v. The C. & W. R. R. Co., Supreme Court, Ia., June 2, 1878, 7 Central Law Journal 276.

The certificates issued by Hilliard, being the ones in question and exchanged for those issued by Haynes, being so exchanged without authority of the court, are alike void.

From what has been said, it will be seen that the court below did right in holding that the certificates, as receiver's certificates, were void, and that they were not rightfully payable out of the proceeds of the property in the hands of the receiver.

But there is another question in the case, and that is, did the court below err in dismissing the petition, and in not granting some relief under it? This question must be answered in the affirmative.

It appears that the money advanced by Newbold's Sons & Co. was used by B. E. Smith to pay off, and take up, coupons on the bonds. This the bondholders had no right to expect, or ask from Newbold's Sons & Co. The latter were under no obligation to pay off these coupons.

When they advanced the money to Smith on the supposed receiver's certificates, they did so in good faith, supposing that the certificates were valid and that they would be repaid in full.

Had this money actually gone into the hands of the receiver and been by him applied for the benefit of the property in his hands, under the sanction of the court, equity and justice would require the payment of the certificates.

In that case value would have been added to the mortgaged property, and for its protection and preservation. It would be proper that such money should be made a first lien and this principle would hold good whoever might become the holder of the railroad mortgage bonds. Instead of the money being used in promoting the general interest of the railroad property in the hands of the receiver it was applied to the payment of the coupons falling due April 1st, 1876.

So far as appears from the evidence, the holders of the bonds received the payment on these coupons without any actual knowledge that the money paid them was received for receiver's

certificates.   In many instances the bonds have been trans-
ferred into other hands.   It would not be equitable or just,
that the money advanced under the circumstances, should now
be made a first lien on the estate, in the hands of the receiver.
But it would be equitable to treat the holders of the supposed
receiver's certificates as the purchasers of all the coupons in ques-
tion which were taken up with their money, or which were
really paid by means of the money advanced by Newbold's Sons
& Co. and should have been taken up.   In other words, the
holders of the Newbold certificates should be subrogated to
the rights of the holders of the coupons so taken up, or paid at
the time they were paid or taken up.

The coupons held by Neil, and which Smith claims he
agreed with Dennison, should be delivered up—twenty-nine
in number—should also be delivered up to the petitioners, pro-
vided it should appear that Dennison was authorized by the
holders to the Neil bonds to make such an arrangement with
Smith as testified to by the latter.

The twenty coupons held by Thompson Griggs & Co., if they
were the property of said firm at the time Smith received the
money, and Smith applied the money to their payment, should
also be treated in the same manner as the 541 coupons, and
the petitioners subrogated.   From all that appears from the
evidence.   Smith being one of the members of the firm
had a right to apply the money in his hands to the payment of
the 20 coupons, and give the firm credit for the proceeds
which he claims he did do.

The court then erred in denying equitable relief, and in
dismissing the petitions.   The court should have decreed that
the petitioners were entitled to be subrogated to the rights of the
coupons so taken up; and that the coupons be brought into
court and delivered up, and upon the final distribution of the
funds arising from the sale, under decree or otherwise, the
petitioners be paid their just proportion as the holders of such
coupons, according to the rules of equity in such cases, as also
their costs, in such manner as the court should deem equitable
and just.   For these errors the decree of the court below is

reversed and the cause is remanded, with leave to take additional evidence, if the parties so desire.

Reversed and remanded.