IN THE

# SUPREME COURT OF ILLINOIS.

88   11
123  495
88   11
174  417

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1878.

CHARLES G. WILLIAMS

*v.*

THE TOWN OF ROBERTS.

1. MUNICIPAL SUBSCRIPTION AND BONDS—*requisites to validity.* Where a municipality is empowered to subscribe to the capital stock of a railroad company, and issue its bonds in payment of the subscription, but it is also required that there shall first be an affirmative vote of a majority of the electors of the municipality to that effect, no power exists to make the subscription and issue the bonds until after such vote shall have been obtained, at an election held for that purpose, called by the authority prescribed by the law, and upon such notice of the time and place of holding the election as the law directs; and whoever deals in municipal bonds is chargeable with knowledge whether these precedent conditions to the existence of the power of making the subscription and issuing the bonds have been complied with.

2. SAME—*of the call and notice of town election.* Where the law under which a town subscription was made and its bonds issued to a railway company, required there should first be an affirmative vote of a majority of the electors of the town authorizing the subscription, and that the election should be called upon the application of twenty legal voters and tax-payers of the town, and that notice of the election should be posted for at least twenty days, and the application for the election was signed by only twelve legal voters and tax-payers

of the town, and the notice of the election was posted only ten days, it was *held,* that the election was a nullity, and gave no power to make the subscription and issue the bonds.

3.  SAME—*what municipalities may be authorized to subscribe without vote.* County boards, such as boards of supervisors, county commissioners, and the municipal authorities of incorporated cities, towns and villages, may, when empowered so to do by proper legislation, subscribe for the capital stock of railroad corporations without first submitting the question to the electors of the municipality, they being considered as the representatives of the electors. But, under our township system, there is no officer or board representing the corporate authority of the town, the electors only representing it, and they must so necessarily act through town meetings or elections.

4.  SAME—*whether invalid election may be validated by legislation.*  It has been held, that where municipal authorities may be empowered by the legislature to subscribe for capital stock of a railroad company without a vote of the electors, the legislature may declare a non-compliance with the law in holding an election on a proposition to make such subscription, of no consequence, and thereby validate the same; but the legislature is powerless, by subsequent enactment, to validate a void election of a town, under the township system, for such subscription.

5.  SAME—*bonds not rendered valid by recitals therein.*  The recitals of those officers invested with the ministerial duty of issuing municipal bonds, as to the legality of the election authorizing their issue, and the existence of the facts necessary to their validity, will not render such bonds, when issued without authority of law, valid, in the hands of *bona fide* holders.  The agent can not, by his act alone, invest himself with power to bind his principal, and his act, unknown to and unsanctioned by his principal, can not be held to estop the latter to deny his power to act.

6.  CONSTITUTIONAL LAW—*legislative power to create debt for municipal corporation.*  It is the settled rule of this court, and engrafted on our present constitution, that the legislature can not compel a municipal corporation to incur a debt or issue its bonds for a local corporate purpose, without its consent. Under the old constitution it might be invested with power, to that end, by the legislature, and incur such debt through its corporate authority, but the legislature is not authorized to create such debt for it, or to compel its corporate authority to do so.

7.  Where an election of a town, to decide upon a corporate subscription, was not called according to law, and the notice thereof was not given for the requisite time, it was *held,* that a subsequent act of the legislature legalizing such election, and declaring it and the subscription binding, was invalid, because beyond legislative power.

8.  TOWNSHIP SYSTEM—*corporate authority of town.*  The supervisor and town clerk, neither separately nor conjointly, are the corporate authority of

their town. They are simply town officers, with limited duties to perform in respect of town affairs. They possess no power as town officers, or under the statute, except under the direction of the corporate authorities (the electors), to do any act in regard to making corporate subscriptions or issuing bonds. The town must act through its electors, either to ratify an act already done or to authorize an act to be subsequently done.

APPEAL from the Circuit Court of Marshall county; the Hon. JOHN BURNS, Judge, presiding.

This was an action of assumpsit, by appellant, as assignee of the Hamilton, Lacon and Eastern Railroad Company, against appellee, upon a certain bond executed and delivered by appellee to said railroad company, as follows:

" $1000.                                  No. 17.

" *United States of America, State of Illinois, County of Marshall, Town of Roberts:*

" Know all men by these presents, that the town of Roberts, in the county of Marshall and State of Illinois, is indebted to the Hamilton, Lacon and Eastern Railroad Company, or bearer, in the sum of $1000, lawful money of the United States, which the said town of Roberts promises to pay to said Hamilton, Lacon and Eastern Railroad Company, or to the bearer hereof, on the 7th day of April, in the year 1876, at the office of the treasurer of the county of Marshall, aforesaid, in the town of Lacon, Illinois, on the presentation of this bond, with interest thereon from the 7th day of April, A. D. 1871, at the rate of ten per centum per annum, payable, annually, at the office of the treasurer of the county of Marshall, aforesaid, on the 7th day of April in each year, on the presentation and surrender of the annexed coupons, as they severally become due.

" This bond is one of a series, amounting, in the aggregate, to $30,000, and consisting of thirty bonds, numbered from one to thirty, inclusive, each of which is for $1000, and all of which are of even date, and are issued, in accordance with the laws of the State of Illinois, in payment of a subscription made by said town of Roberts for 300 shares of the capital stock of

the Hamilton, Lacon and Eastern Railroad Company, which said subscription was made by said town by virtue of a vote of a majority of the voters of said town in favor thereof, at a special election held for such purpose in said town on the 25th day of March, A. D. 1869, in pursuance of the laws of the State of Illinois, and the several acts of the General Assembly incorporating said railroad company.

"In witness whereof the supervisor of said town of Roberts has signed this bond, and the clerk of said town has attested the same, and on this 7th day of April, in the year 1871.

JOHN NORTON,
*Supervisor of the Town of Roberts, Marshall Co., State of Illinois.*

"Attest:                                  JOSEPH MALEHAM,

*Clerk of the Town of Roberts, Marshall Co., State of Illinois.*

"Indorsement: This bond is issued by the town of Roberts, on the 7th day of April, A. D. 1871, and duly recorded by me according to law.

JOSEPH MALEHAM,
*Clerk of the Town of Roberts.*"

The following is a copy of the coupon attached to foregoing bond:

"Town of Roberts, county of Marshall, State of Illinois, will pay to the bearer $100, at the office of the county treasurer in the town of Lacon, on the 7th day of April, 1876, interest on bond No. 17, issued by said town in payment of subscription to the capital stock of the Hamilton, Lacon and Eastern Railroad Company.

JOHN NORTON,
*Supervisor of the Town of Roberts.*
JOSEPH MALEHAM,
*Clerk of the Town of Roberts.*

"Indorsement: Filed September 21, 1871.

(Signed)                                  JAMES WESTCOTT, *Clerk.*"

The declaration avers the indorsement of the bond to appellant, on the day it bears date, by the Hamilton, Lacon and Eastern Railroad Company, and contains the other necessary averments to charge appellee with its payment.

Appellee pleaded two pleas, as follows:

"1st.  And now the defendant comes and defends the wrong and injury when, etc., and says *actio non*, because it says that the said election set forth and recited in said bond was held contrary to and in violation of law, in this: that the said election was called by the town clerk of said town without any application having been filed therefor, as required by an act of the General Assembly of said State, in force March 5, 1869, entitled 'An act to authorize the incorporated towns of La Salle and Marshall and Livingston counties to subscribe to the capital stock of the Hamilton, Lacon and Eastern Railroad Company;' but the same was called by said clerk under and by virtue and in pursuance of a certain application, in writing, filed in his office on the 18th day of February, A. D. 1869, which application was, in fact and figures, as follows, to-wit:

"'To the Township Clerk of the Township of Roberts, County of Marshall and State of Illinois:

"' C. Broaddus, Hiram Myers, (justice of the peace and supervisor,) and twelve freeholders of the said township, deeming it necessary that a special township meeting be held in said township, for the purpose of allowing the legal voters of said township to vote upon the question as to whether or not said township shall subscribe $30,000 to the capital stock of the Hamilton, Lacon and Eastern Railroad Company, and issue the bonds of said township therefor, payable one-third in three years, one-third in five years, and one-third in eight years from this date, with ten per cent interest thereon per annum, payable annually, for the purpose of building a railroad from the city of Lacon, on the grade of the American railroad, through said town of Roberts, to connect with the Chicago, Alton and St. Louis railroad in said State, to be signed by the supervisor and countersigned by the clerk of said township, as follows, to-wit: when the track of said Hamilton, Lacon and Eastern railroad shall have been graded, ties laid and the iron thereon, and the said railroad completed and the cars running in said town of Roberts, together with a side

track and depot, built within one-half or three-fourths of a mile of the geographical center of said town of Roberts, on the line of said railroad, then the sum of $30,000, or so much of said sum as may be necessary for the completion of the said railroad, of said bonds, shall be issued as aforesaid,—we therefore ask you to call a meeting of said township, for the purpose of voting upon the question of subscribing said stock, as aforesaid, as soon as you can conveniently do so.

> "'JAMES HOYT,        GEORGE W. WALKER,
> "'JACOB SALTER,       WILLIAM B. GREEN,
> "'JOHN NORTON,       J. R. SHOW,
> "'ABRAHAM DELONG,    LIVINGSTON ROBERTS,
> "'JOSEPH MALONE,     J. J. MYERS,
> "'D. H. MALEHAM,     JAMES B. DAVIS.'

"And the defendant in fact says, that the said application remaining on file in the office of the town clerk on the 15th day of March, A. D. 1869, said clerk called said election in pretended pursuance of said application, and on the said day posted written notices of such election in three of the most conspicuous places in said town, which notices, so posted, were in letters, words and figures, as follows:

"'*Special Town Meeting.*—Whereas, the supervisor and justice of the peace, with twelve freeholders, of the town of Roberts, having, in writing, filed in my office a statement that a special town meeting is necessary to the interest of said town, setting forth the object of the meeting, the inhabitants, legal voters of the said town of Roberts, are therefore hereby notified that a special town meeting will be held at the town hall on Thursday, the 25th day of March, 1869. The polls will be open at 9 o'clock in the forenoon, and close at 6 o'clock in the afternoon, for the purposes following, to-wit: For the purpose of allowing the legal voters of said town to vote upon the question as to whether or not said township shall subscribe $30,000 to the capital stock of the Hamilton, Lacon and Eastern Railroad Company, and issue the bonds of said township therefor, payable one-third in three years, one-third in five

years, and one-third in eight years from this date, with ten per cent interest thereon per annum, payable annually, for the purpose of building a railroad from the city of Lacon, on the old grade of the American Central railroad, through said town of Roberts, to connect with the Chicago, Alton and St. Louis railroad, in said State, said bonds to be signed by the supervisor and countersigned by the clerk of said town, as follows, to-wit: when the track of said Hamilton, Lacon and Eastern railroad shall have been graded, ties laid and the iron laid thereon, and the said railroad completed and the cars running in said town of Roberts, together with a side track and depot, built within one-half or three-quarters of a mile of the geographical center of the town of Roberts, on the line of said railroad, then the sum of $30,000, or so much of said sum as may be necessary for the completion of said railroad, of said bonds, shall be issued as aforesaid, being the object contained in said statement filed in my office this 8th day of February, 1869.

"'Given under my hand, at Roberts, this 15th day of March, 1869.

"'H. STATLER, *Town Clerk.*'

"And said election, mentioned in plaintiff's declaration and the bond described therein, was held in pursuance of said application and notice, and by virtue of no other authority, application or notice whatever; and the notice thereof given was not for the length of time required by said law, being only ten days' notice, nor was the said election called or held in pursuance, nor in pretended pursuance, of said act, whereof the defendant says that the said election, as held, was unlawful and void, called without authority, and conferred no authority on the supervisor and town clerk of said town, nor upon either of them, to make the subscription of stock mentioned in the said declaration, nor to issue the bonds and coupons in payment thereof, in manner and form as in said declaration stated, wherefore the defendant in fact saith, that the said bonds and coupons were made and issued by the said supervisor and town

2—88 ILL.

clerk of said town without authority of law, and are void; and defendant further, in fact, says, that the said application and notice have ever since remained of record in the town clerk's office of said town, among the public records of said town, and said election was also attached to and formed a part of the written contract of subscription made by the supervisor of said town on the subscription book of the said railroad company—all of which the plaintiff, prior to his alleged purchase of said bonds, had constructive notice, to-wit: on the 7th day of April, 1871, at, etc. And defendant further, in fact, saith, that at said election the votes cast for said subscription were not a majority of all the votes of said town, being about one-third of the legal votes of said town, but were a majority of all the votes cast at said pretended election. All of which defendant is ready to verify, whereof it prays judgment, etc.

"2d. And for further plea in this behalf to said plaintiff's declaration, defendant says *actio non*, because it says, that at the said election, mentioned in said declaration and bond attached thereto, it was voted, as specified in the notice thereof, to subscribe the said stock to the said railroad company, for the purpose of building a railroad from the city of Lacon, on the old grade of the American Central railroad, through said town of Roberts, to connect with the Chicago and Alton railroad, in said State, a distance of fifty-one miles, said railroad being named in said notice as the 'Chicago, Alton and St. Louis railroad,' said bonds to be issued when the track of the Hamilton, Lacon and Eastern Railroad Company shall have been graded, ties laid, the iron thereon, and the railroad completed and the cars running in said town, together with side track and depot building, within one-half or three-quarters of a mile from the geographical center, on the line of said American Central railroad, then the bonds, or so much thereof as may be necessary, to be issued, the said purpose and condition being stated in the notice of said election. And defendant in fact says, that afterwards, to-wit: on the 31st day of March, A. D. 1869, and by virtue of said election, and of no

other authority whatever, the supervisor of said town, upon the books of the Hamilton, Lacon and Eastern Railroad Company, subscribed for 300 shares, of $100 each, of the capital stock of the Hamilton, Lacon and Eastern Railroad Company, to aid in the construction of the said railroad from Lacon to the *Illinois Central* railroad. And defendant in fact saith, that the said supervisor, in making said subscription, did not pursue the authority vested in him by said election, even if said election had been legal and valid, and the said subscription was not in fact made to or used in building the Hamilton, Lacon and Eastern railroad from the city of Lacon, on the grade of the American Central railroad, through said town, to connect with the Chicago and Alton railroad, named the Chicago, Alton and St. Louis railroad in said notice, but, on the contrary, said subscription was made to aid in the construction of the said Hamilton, Lacon and Eastern railroad from Lacon eastward to the Illinois Central railroad, and the said subscription was, in fact, used in building a railroad from Lacon sixteen miles, to connect with the Chicago, Jacksonville and St. Louis railroad. And defendant in fact saith, that said subscription as made, and the enterprise in which the same was expended, were each a different enterprise, substantially and fundamentally, from the enterprise voted for, as specified in said election notice, and not so beneficial to defendant. And defendant in fact saith, that true it is that the General Assembly of said State of Illinois did pass an act entitled 'An act supplemental to certain acts of the General Assembly relating to the Hamilton, Lacon and Eastern Railroad Company, and to legalize the organization of said company, and to confirm the subscription to the capital stock thereof,' approved April 17, 1869, which said pretended act declares that said subscription is thereby made valid and binding, according to the terms thereof, and authorizes the supervisor of said town of Roberts to issue, in due form, bonds of the said township for the payment of the amount of stock subscribed, according to the terms of the subscription; but defendant in fact saith,

that said pretended act of the General Assembly, in so far as it attempts to legalize said subscription, is in violation of the constitution of the State of Illinois at that time in force, and to that extent is and was null and void, wherefore defendant in fact saith, said subscription and the issuance of said bonds in payment thereof were without authority of law and void, and the said bond and coupon are null and void. All of which the defendant is ready to verify, wherefore it prays judgment."

Appellant demurred, jointly and severally, to these pleas, and the court overruled the demurrer, whereupon, appellant electing to abide by his demurrer, judgment was rendered in favor of appellee.

Mr. JAMES M. CUTRIGHT, for the appellant.

Mr. A. J. BELL, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This court has repeatedly announced the doctrine, that where a municipality is empowered to subscribe to the capital stock of a railroad company, and issue its bonds in payment of the subscription, but it is also required that there shall first be an affirmative vote of a majority of the electors of the municipality to that effect, no power exists to make the subscription and issue the bonds until after such vote shall have been obtained, at an election held for that purpose, called by the authority prescribed by the law, and upon such notice of the time and place of holding the election as the law shall direct; and that whoever deals in municipal bonds is chargeable with knowledge whether these precedent conditions to the existence of the power of making the subscription and issuing the bonds have been complied with. *Marshall County* v. *Cook*, 38 Ill. 48; *People ex rel. etc.* v. *Supervisors of Logan County*, 63 id. 384; *Harding* v. *Rockford, Rock Island and St. Louis R. R. Co.* 65 id. 90; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562.

The first section of the act of March 6, 1867, (Private Laws of 1867, vol. 1, p. 866,) under the provisions of which it is claimed the bond in controversy was issued, requires there shall first be an affirmative vote of a majority of the electors of the town, authorizing the subscription; that the election shall be called upon the application of twenty legal voters and tax-payers of the town; and that notice of the election shall be posted for at least twenty days. The pleas show that the application for the election was signed by only twelve legal voters and tax-payers of the town, and that the notice of the election was posted only ten days. Under the ruling referred to, therefore, it must follow, the election was a nullity, and no power existed in the supervisor of the town to make the subscription and issue the bonds.

But it is contended, that, conceding this to be true, the subscription and issue of the bonds were made valid by a curative act of the legislature, in force April 17, 1869. (Private Laws of 1869, vol. 3, p. 302.) The second section of that act does assume to have that effect. It refers to the subscription by name, and declares that it shall be valid and binding; and, therefore, if it was within legislative competency thus to bind the town, that settles the objection to the bond.

County boards, such as boards of supervisors, county commissioners, etc., and the municipal authorities of incorporated cities, towns and villages, may, when empowered so to do by proper legislation, subscribe for the capital stock of railroad corporations without first submitting the question to the electors of the municipality. They are elected as repesentatives of the electors, and, theoretically, in appropriate cases, their acts are the acts of those they represent. Hence it has been held, where a vote of the electors has been required as a precedent condition to the making of a subscription for stock in a railroad company, and the law prescribing the mode of calling and holding the election has not been observed, inasmuch as the legislature might have empowered the municipal authorities to make the subscription without first submitting the

question to the electors, it may, by a subsequent enactment, declare the non-compliance with the law in the holding of the election of no consequence, and validate the subscription—in other words, validate the subscription without reference to the election. This, however, it will be observed, is upon the theory that power to make the subscription does not, in any degree, necessarily depend upon a vote of the electors of the municipality upon that question, but solely upon the will of the legislature.

But, under our system of township organization, there is no officer or board representing the corporate authority of the town. The electors, only, represent it, and they, in doing so, must and do necessarily act through town meetings or town elections, and it is not pretended they may, or did, in the present instance, bind the town in any other way. The doctrine has been announced and adhered to by this court for a number of years, and is engrafted upon our present constitution, that the legislature can not compel a municipal corporation to incur a debt or issue its bonds for a local corporate purpose without its consent. *Hessler* v. *Drainage Com'rs,* 53 Ill. 110; *Lovingston* v. *Wider,* id. 302. The municipality may be invested with power by the legislature to that end, and incur such debt through its corporate authority; but the legislature is not authorized to create such debt for it, or to compel its corporate authority to do so.

Here, then, the only pretense that the corporate authority of the town (the electors) acted, in making this subscription and issuing the bonds, is the pretended election. But it was not called in conformity with law, and the notice of the election was not given as the law required. Of this, it is to be presumed, the electors were cognizant, and, being advised of its illegality, it is fair to presume that many opposed to the proposition pretended to be submitted did not participate in the election, knowing that they could not possibly be affected by it. The election being illegal and void, it is impossible to say that, in any view, the result can be regarded as the assent

of the corporate authority of the town to the proposition submitted. The corporate authority of the town (the electors) must and can only act when called together in obedience to law, and when not thus called together it is obvious any action by them can, at best, amount to no more than the action of a mass meeting. The supervisor and town clerk, neither separately nor associately, are the corporate authority of the town. They are simply town officers, with limited duties to perform in respect of town affairs, whom the law has appointed to discharge a ministerial duty, in obedience to the direction of the town authority. They possessed no power, either as town officers or under the statute, except under the direction of the corporate authority of the town, to do any act in regard to making the subscription or issuing the bonds.

The act of April 17, 1869, then, rests solely on the power of the legislature to create a debt against the town without the consent of its corporate authority. That consent had not been given anterior to the passage of the act—it was not required, nor has it been given posterior to its passage—and hence, upon the authority of the cases referred to, it was invalid, because beyond legislative competency. This question was fully considered and discussed in *Marshall* v. *Silliman,* 61 Ill. 218, and *Wiley et al.* v. *Silliman,* 62 id. 170, and what we have said goes but little beyond a re-statement of the propositions there carefully elaborated. It is true, in those cases the subscription condemned had not been authorized by the corporate authority of the town, although an election for that purpose was claimed to have been held, because no law authorized an election for that purpose; but the difference between a pretended election, held to be a nullity because not authorized by any law, and one held to be a nullity because not called and held in obedience to an existing law, can surely be of no significance to the present question. The result is, in neither case was there any action of the corporate authority of the town (the electors) on the question, which the law will recognize, and in both cases the legality of the subscription and

issue of the bonds must rest solely upon the act which assumes to validate them. See *Barnes* v. *Town of Lacon,* 84 Ill. 461.

In our opinion, the case presents a question, not of the mere defective execution of a power in issuing bonds, but of an entire absence of power in those assuming to be the representatives of the town to act in the matter; and, thus holding, the judgment below meets with our approval, and must be affirmed.

We are aware that a rule, differing in material respects from that followed by this court in regard to the extent to which *bona fide* holders of municipal bonds shall be protected by the recitals of those invested with the ministerial duty of issuing such bonds, is held by the Supreme Court of the United States. But, much as we respect the ability and learning of the members of that court by whom that rule is maintained, we have never been convinced that it is preferable to that we have adhered to. The agent can not, in our opinion, by his act alone, invest himself with power to bind his principal; and his individual act, unknown to and unsanctioned by his principal, can not be held to estop his principal to deny his power to act. As we have seen, a town must act through its electors, either to ratify an act already done or to authorize a future act, where its acquiescence or consent is material; and there having been, here, no such act, there can be no estoppel.

*Judgment affirmed.*