# JOSEPH D. SCHAEFFER *et al.*

*v.*

# EDWARD BONHAM *et al.*

*Filed at Mt. Vernon June 14, 1880.*

1. MUNICIPAL BONDS *issued by a town—who may be authorized to issue them without a vote of the people.* Under the act of February 28, 1867, the county of Wayne, in this State, which had previously adopted township organization under the general law on that subject, became organized under a special township system, dividing the county into four supervisors' districts, one of which, among other townships, contained the town of Lamard. In that district there were two supervisors elected, neither of whom resided in the town of Lamard, but that town had its own town clerk. The act of 1869 amendatory of the charter of the Illinois Southeastern Railroad Company, assumed to authorize townships in Wayne county which had theretofore, under the charter of the company, voted donations to the road, to issue bonds of the townships for the amount of such donations, without a vote of the people of the respective towns on that subject, the bonds to be signed by the supervisor or supervisors of the district in which the town should be situate, and countersigned by the town clerk. Accordingly, in pursuance of such supposed

authority, the town of Lamard undertook to issue its bonds to the railroad company for the sum of $10,000, the amount which had been previously voted by the voters of the town as a donation to the road. The bonds were signed by the two supervisors of the district in which the town was situated, and countersigned by the town clerk. It was *held*, the two supervisors mentioned and the town clerk were not the corporate authorities of the town of Lamard, in the sense of the constitution of 1848, so as to be capable of being invested with authority to create a debt in behalf of the town without a vote of the people, and therefore the bonds were issued without authority of law, and were absolutely void, even in the hands of innocent holders.

2. It has been held that even the supervisor elected in the particular town, and the town clerk thereof, are not such corporate authorities as may, under the constitution, be authorized by the legislature to create a corporate debt without the consent of the people to be affected, and especially would that be the rule in regard to these supervisors, who do not even reside in the town or vote therein.

3. Same—*effect of a vote for a donation as authorizing the creation of a debt.* Where the voters of a town have voted in favor of a proposition to make a donation in aid of a railroad, for which a tax is to be levied and the money paid to the railroad company, that is a proposition entirely distinct from one to create a debt in respect to such donation, and a vote of that character will not be construed to authorize the issue of the bonds of the town for the amount so voted.

4. Same—*estoppel to deny power.* The payment of taxes levied to meet accruing interest upon bonds issued in the name of a municipality will not operate to estop the tax-payers of the municipality from alleging a want of power to create the debt. This rule is in contradistinction to the case of the mere irregular or defective execution of an existing power, for in such case such a payment of taxes may well work an estoppel to set up the irregularity.

Writ of Error to the Circuit Court of Wayne county; the Hon. C. S. Conger, Judge, presiding.

Mr. E. Beecher, for the plaintiffs in error:

In this case there is no disagreement about the facts. The main question is as to the *constitutionality* of the laws set forth in the pleadings.

There are certain rules so well established as not to require a lengthy citation of authorities in their support. Among them are:

Laws will be held constitutional unless the contrary clearly appears. *Bunn et al.* v. *The People et al.* 45 Ill. 398, 411, and cases cited in opinion; *Kerrigan* v. *Force,* 68 N. Y. 381–5; *The People* v. *Kelly,* 76 id. 475.

All irregularities in elections or in the execution of the bonds are cured by the certificate of the officers issuing the bonds. *Commissioners* v. *Bolls,* 94 U. S. 104; *Commissioners* v. *January,* id. 202; *Town of Coloma* v. *Eaves,* 92 id. 484.

Especially is this the rule as to bonds in the hands of innocent holders. Same authorities last cited.

The acts of officers *de facto* are valid and binding as to the public or third persons. *The People* v. *Ammons,* 5 Gilm. 105; *Pritchett* v. *The People,* 1 id. 525; *Guyer* v. *Andrews,* 11 Ill. 494.

Apply these rules and others to the present case. It can not be said the question of unconstitutionality is so clear as to be beyond doubt. The presumption of the validity will prevail unless the contrary is shown, and this must be done by the objectors.

The bonds recite that all the conditions necessary to their validity had been complied with, nor is there any question that they are in the hands of innocent holders. To invalidate them a *want* of authority must affirmatively appear.

We claim the act of February 24, 1869, is not unconstitutional. The title expresses the object with sufficient certainty, nor is there more than one subject included in the act, within the meaning of the constitutional prohibition. *The People* v. *Brislin,* 80 Ill. 423, 430, 2–3; *O'Leary* v. *Cook County,* 28 id. 534; *Beinz* v. *Weber,* 81 id. 230.

In the case of *Belleville R. R. Co.* v. *Gregory,* 15 Ill. 21, the title was more doubtful than in the present case, and yet it was held sufficient.

To the act of February 28, 1867, plaintiffs below make two objections: that it violates section 23, article 3 of the constitution of 1848; also, section 6, article 7 of the same. The first objection we have endeavored to answer above. To the

second we say, that while that section required township organization should be by general laws, that does not prevent the legislature from *amending* such laws after they have been adopted, without going through the same process. *Wilcox* v. *The People*, 90 Ill. 187, 204, and cases cited in opinion.

The word *shall* is not imperative,—it is frequently held to be directory only. *Wheeler* v. *Chicago*, 24 Ill. 105.

The officers who signed the bonds were acting in the name of and for the town. The people had voted the bonds, the legislature had directed by whom they should be executed, and they were so done, and if they were signed by one not in office *at the time* of delivery, the act still binds the town. *Brooklyn* v. *Insurance Company*, 99 U. S. 362.

The persons who executed these bonds were officers *de facto*. There is no pretence that, during the time indicated, there was any other supervisor in Lamard township. If they were not officers *de facto*, then for four years there was a hiatus—an interregnum—in the affairs of that town and of the county. If this one act is void, all other acts of the town for the same time are equally void. The consequence of such a holding would be so serious as to cause a court to hesitate long before so holding, and no court will so hold unless compelled by unbending law.

Whether the election of November 10, 1868, was valid or not, the legislature had the power to authorize the issuing of bonds without a vote of the people. *Marshall et al.* v. *Silliman*, 61 Ill. 225, and cases cited in opinion. Then the act of February 24, 1869, gave authority to issue the bonds, whether it be called an amendatory or original act. *Williams* v. *Roberts*, 88 Ill. 12.

For nine years this township has paid the interest on these bonds without objection. By so doing they have sanctioned the acts of such officers,—they have allowed innocent parties to acquire rights which are now sought to be taken from them. If there is any such doctrine as estoppel, this is a proper case for its application.

But this town is not complaining. The objection comes from a few persons who happen to own property in the town. The town is ready and willing to comply with its legal and moral obligations, and will do so, unless restrained by the mandate of this court.

The bondholders are not parties to this suit. We are aware there are cases which hold they are not indispensable parties, but we submit such decisions have been incidental to the main question, and have not been thoroughly investigated. If this decree is sustained, the officers must be enjoined, while the town will still be liable to suit by the bondholders, whose rights can not be affected unheard. The law abhors a multiplicity of suits; and to prevent that, all persons ought to be made parties who have any interest in the litigation.

One other view: The constitution does not provide who shall constitute the township authorities—that is left to legislation. It is conceded that under the general Township Organization law the voters were the legal authorities, or the voters and the officers named. In the law of 1867, the legislature did not attempt to change that; they only enacted that district supervisors might sign the bonds after they had been authorized by the vote of the people. The people were the authority—the evidence of such authority having been exercised, was the signing of the bonds by the supervisor and clerk —a mere ministerial duty. If the people, in a legal manner, authorized an act to be done, why could not the legislature say the evidence of such act should be the certificate of a justice, clerk, or otherwise?

Mr. JAMES McCARTNEY, for the defendants in error:

The first error assigned is, that the court erred in holding the act of February 28, 1867, changing the manner of electing supervisors, to be void. That this is a local law no doubt can be entertained, for it only applies in the body of the act to Wayne county. *Mitchell* v. *The People*, 70 Ill. 138; *Belleville, etc. Railroad Co.* v. *Gregory*, 15 Ill. 20.

This, then, being a local act, is repugnant to sec. 23, art. 3 of the constitution of 1848. It is true, the legislature declared this act to be a public act, but it did not, and could not, declare it *not* to be a local act.

Is the subject of the law expressed in its title? The subject of the act is, to change the general Township Organization law so far as the same applies to Wayne county, and, in its stead, to provide, that the county shall be divided into districts, and that each district shall elect one supervisor, except the second, which shall elect two; and that these supervisors shall be elected every four years. The time of electing them was not changed. The title is, "An act to change the time of electing certain officers in a county therein named." The title does not express the subject of the act, which is carefully disguised. *The People* v. *Institution of Protestant Deaconesses,* 71 Ill. 229.

We claim that this act is unconstitutional and void, because it is in conflict with sec. 6, art. 7 of the constitution of 1848, which requires the legislature to provide by general law for a township organization.

But it is claimed that the officers who signed the bonds were acting in the name of and for the town; that the people voted the bonds; the legislature had directed by whom they should be executed, and they were so issued. It certainly can not be claimed that persons acting in the name of a town can bind it. If so, any person or persons can bind any town by issuing its bonds and pretend to be acting for the town. Courts only sustain acts of officers who have some color of office.

But if these laws are constitutional, did the vote of this township confer any authority to issue the bonds? The vote was held at a special town meeting called on November 10, 1868, and was held by a moderator and town clerk, and not by judges and clerks. Section 10 of the charter (Laws of 1867, vol. 2, page 750,) provides: "And the election herein provided for shall be held, canvassed and returned as other

regular town elections." *Lippincott* v. *Town of Pana,* 92 Ill. 24.

The act which authorized the issue of the bonds in question is invalid. It was passed on February 24, 1869, and is entitled "An act to amend an act entitled 'an act to incorporate the Illinois Southeastern Railway Company.'" The act of 1867, to which this purports to be an amendment, provides that townships may donate money, etc. The amendatory law confers a new power altogether. The usual mode of raising money to pay municipal indebtedness is by taxation, but the issue of bonds is a new and extraordinary power.

An amendment would be proper in this act if it had provided that the money might be collected by installments, or such like. But I submit that the issue of bonds can not be construed as an amendment, but as a new power. In Texas it has been held in several cases that authorizing the issue of bonds in the original act chartering the railroad was void. *Giddings* v. *San Antonio,* 47 Texas, 548; *Antonio* v. *Gould,* 34 id. 49. But I think that probably that power might be given in the original act as being germane to the main object of the bill.

It is argued by counsel that, "For nine years this township has paid the interest on these bonds, and that the court should construe this fact as an estoppel." It may be true that the township would be estopped if the grounds we urge against these bonds did not go to the authority to issue them instead of to the irregularity of their issue. In such case, where the bonds were not authorized no estoppel arises. *East Oakland* v. *Skinner,* 4 Otto, 255; *Pendleton County* v. *Amy,* 13 Wall. 297, etc.

It is complained that the bondholders are not parties to this suit. This court has held that they are not necessary parties to a suit of this character, and if this be so, the suit may proceed without them. *Ryan* v. *Lynch et al.* 68 Ill. 160; *Leitch* v. *Wentworth,* 71 id. 146; *Marshall* v. *Silliman,* 61 id. 218.

It is also claimed that it was error decreeing costs against

defendants. In chancery proceedings the taxation of costs is discretionary with the court, and the exercise of such discretion can not be assigned for error. And, in any event, why should not the officers be taxed with costs, they being engaged in attempting to collect an illegal tax?

It is claimed further that the decree in this case is wrong, because it directs the money to be refunded that is in the hands of the officers. This is authorized by the Supreme Court in the case of *Livingston County* v. *Weider*, 64 Ill. 427.

The filing of a bill by tax-payers to enjoin the collection of an illegal tax is authorized by many cases in this State. *Wiley et al.* v. *Silliman et al.* 62 Ill. 170, and many other cases.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed to enjoin the Auditor from levying a tax, and the county clerk from extending it on the collector's books, on the property in a township in Wayne county, to pay the interest on certain bonds issued in the name of the township to aid in the construction of a railroad.

The bill alleges that the law authorizing the election, and the amendatory law authorizing the bonds to be issued, are unconstitutional and void; and that the election was not held in conformity to the law conferring the power to hold it, and no power was thereby conferred to issue the bonds. The court below granted the relief, holding the bonds were void, and that the collection of the tax be perpetually enjoined.

The parties stipulated as to the facts on which the questions arise, which agreement is as follows:

"That on the first Tuesday of April, 1867, an election was held in said Wayne county, under and in accordance with the provisions of the act of the legislature recited in complainants' bill, entitled 'An act to change the time of electing certain officers in a county therein named,' passed February 28, 1867.

"That at said election there were elected, in the district denominated the second supervisors' district, composed of the townships of Big Mound, Lamard, Jasper, and Barnhill, two supervisors, viz: J. B. Borah and Miles H. Harris.

"That at the time of said election, said Borah resided in said town of Jasper, and said Harris in Barnhill, and that neither of them ever had, or has since, resided in said town of Lamard.

"That all proceedings in said town of Lamard in relation to calling or holding an election, as specified in complainants' bill, or making subscriptions or donations, or in issuing bonds to said railroad company, were done and performed by said Borah and Harris, claiming to act as such district supervisors, and not by any officer elected by, or residing in, said town of Lamard, except the town clerk.

"That bonds for $10,000, purporting to be the bonds of said town of Lamard, were issued as set forth in complainants' bill; but said bonds were signed by said Borah and Harris, or one of them, and the town clerk of Lamard township, and by no other or pretended officer.

"That said bonds are now in the hands of innocent holders without any further knowledge of irregularities or error therein than is shown by said acts of the legislature, and the records of said town and county."

Upon this statement of facts and the allegations of the pleadings the parties hereto submit to the court for its decision the following questions:

"Was the said act of February 28, 1867, void by reason of its being in violation of sec. 6, art. 7, and sec. 23, art. 3, of the constitution of 1848?

"If such act should be held to be unconstitutional, would the acts of said Borah and Harris be valid as supervisors *de facto?*

"Could the legislature authorize any other person or persons than the town supervisor and clerk to execute the bonds?

" Had the legislature any authority to authorize the issuing of bonds without a legal vote of the people of the township?

"Was the act of 1869, giving authority to towns to issue bonds, constitutional, being an amendatory act?"

Wayne county was, previous to the 28th day of February, 1867, organized and acting under the general township organization law of the State, and was laid off into fifteen townships, each having a supervisor, constituting the board of supervisors of the county.

On the 28th day of February, 1867, Sess. acts, p. 102, an act of the General Assembly was approved, by which the government of the county was changed. The act provided among other things that the county board should consist of five supervisors, and the county was divided into four districts.

The first embraced three townships which are named, and was entitled to elect one supervisor. The second was composed of four, and entitled to two supervisors. The third, of four, and entitled to one supervisor; and the balance of the county composed the fourth, with one supervisor. The supervisors were to be elected at the time fixed by the general law, but to hold their office for four years.

The act also imposed on justices of the peace the duties required of supervisors under the general law, but they were to be selected by the town clerk, town assessor and collector each year. The act related alone to Wayne county, but it was declared to be a public law.

At the same session, and on the 26th day of February, an act was adopted chartering the Illinois Southeastern Railroad Company, which afterwards organized as a corporate body. The 9th section of the charter authorized any township acting under township organization, through or near which the road should run, to donate to the company not exceeding $30,000. But it was provided that it should not be done until voted by the legal voters of the town, at an election to be held for the purpose. The 10th section provides for the manner of calling the election to vote for and against donation, giving

notice, etc., and if the election resulted in favor of donation, the town clerk was required to certify the fact to the county clerk, and he was required to levy and extend a tax on the property in the township sufficient to raise the sum donated, and when collected to pay it over to the treasurer of the company. And it is provided that "the election therein provided for shall be held, canvassed and returned as other regular town elections."

The town clerk of the town of Lamard, which was in district number two, called an election to determine whether the township would donate $10,000 to the road. The election resulted in favor of donation. This election was held on the 10th day of November, 1868, but no steps were taken under it until a subsequent period.

The bonds were issued for the amount previously voted to be donated on the first day of April, 1870. The bonds were subsequently registered with the Auditor of Public Accounts, who had for a number of years levied a tax to meet the interest on the bonds, which had been extended on the taxable property of the township, and collected and applied to the payment of the interest on these bonds. But when the Auditor levied a tax for the same purpose in 1879, complainants, as citizens and tax-payers of the town, filed this bill to prevent the county clerk from extending this tax against the taxable property of the township, and prevent its collection.

The whole question turns upon whether those who issued the bonds had power. The bonds were signed by the two persons acting as supervisors of the second district, but neither of them resided in Lamard township. The bonds were countersigned by the clerk of that township, and were delivered to the railroad company, and, as is agreed, they have passed to innocent holders.

Although several questions are presented we deem it unimportant to discuss them all. If it were conceded that the law placing Wayne county under a special township organization was constitutional, and if it should be conceded that

the election for a donation for $10,000 to be given to the railway company was regular, still the question remains whether the General Assembly could treat that election as authority or consent by the voters to issue bonds running from five to twenty years at ten per cent, and appoint or authorize persons to issue and deliver the bonds. Or, if the election was left out of view, whether the legislature had the constitutional power to authorize these two supervisors and the town clerk to create a binding debt on the township, by issuing and delivering these bonds. The solution of these questions, as we regard the case, must control its decision. We shall, therefore, discuss no others.

It will be observed that the charter authorizing townships to vote donations did not contemplate, and consequently did not provide for issuing township bonds. It only intended the donation to be paid by the levy of a tax, and the payment of the money, when thus collected, to the railroad company. It was not intended that an interest bearing debt should be imposed on the town. But on the 24th of February, 1869, the charter was amended, and the 5th section of the act authorizes and empowers townships in Wayne and Clay counties that had voted donations to the road, without submitting the question to a vote, to issue bonds with interest coupons for ten per cent interest per annum, payable in five years, or at any time not exceeding twenty years, at the option of the townships,— the bonds to be signed by the supervisors thereof, or by the supervisor or supervisors of the district wherein such township is located, and to be countersigned by the township clerk.

But it is said the General Assembly had power to authorize any person they might name to issue bonds legally voted, and the law points to the persons claiming to be supervisors as certainly as if they had been named in the act, and therefore their acts in issuing the bonds are valid, as it was not an official act of a supervisor. If this should be conceded, still the question recurs whether the General Assembly possessed the power to authorize bonds to issue and to create a debt

running from five to twenty years, without a vote of the electors of the township, or by some valid and binding assent of the town.

The electors did not vote to create a debt, but to raise, by taxation on their property, a sum of money to be given to the railroad as a donation. We can not know—had the question been presented to create such a debt, bearing such a rate of interest, running for such a period of time—that the proposition would have been favored by a single voter.

Issuing bonds in the manner prescribed by this section, is a vastly different thing, both in form and substance, from the levy of a tax and paying the whole amount at one levy. The payment of the bonds, with interest, would, on the shortest time named, render the sum fifty per cent greater, and at the longest period two hundred per cent greater, than in the manner the donation was voted by the people. This amendment of the charter makes a radical change in the proposition —one so great as to be wholly different. The people did not vote to incur a debt, but to raise by taxes and to donate $10,000 to the company. The amendment authorizes and empowers one or two men, without the consent of the voters or tax-payers, to create a debt that can not be paid, including interest, with less than $15,000, and it may be $30,000, owing to the length of time the bonds shall run. This creates a debt and imposes burthens on the tax-payers to which they never consented. The case of *Middleport* v. *Ætna Life Insurance Co.* 82 Ill. 562, is conclusive of this question. The material facts in that case and this are substantially the same, and we are unable to make any distinction between the two cases, and that must govern.

In the case of *Gaddis* v. *Richland County*, 92 Ill. 119, it was held, as well as in other cases there referred to, that the General Assembly has, since the adoption of section 5, article 9 of our constitution of 1848, no power to impose debts on municipal corporations; and to sustain these bonds, would be to impose a debt on this township without the consent of its

voters or its corporate authorities. The persons claiming to act as supervisors were not even residents or voters in that township, but resided in other townships. The General Assembly could as well have authorized a citizen of another county to create the debt. We are, therefore, on these authorities, as well as on reason, of opinion these bonds were issued without legal authority, and were and are void.

Nor can it be held that the tax-payers, or the township as a corporation, are estopped to allege such want of authority by payment of taxes to meet interest accruing on these bonds since they were issued. The act of issuing them was unauthorized and void. There was an entire want of power to issue them, and, therefore, payment of taxes can not amount to an estoppel of a void act. Had they been issued by authority, and the power defectively executed, then such acts would operate as an estoppel, but not when there is an entire want of power. Had the township voted to incur a debt, and the bonds had been issued by a person named by the General Assembly, different from the corporate authorities, then payment of interest and acquiescence for such a length of time might have operated as an estoppel. In such a case, the vote to create the debt, if authorized by law and had in pursuance of the law, would have been the essential act to create the debt, and the mere signing and delivering the evidence of the debt would have been valid if done by a person specified by the General Assembly, whether named before or after the vote was had. But such is not the case here. No debt was voted, and the legislature was powerless to authorize any but the corporate authorities to create a debt; and in the case of *Marshall* v. *Silliman*, 61 Ill. 218, it was held, that the supervisor and town clerk were not, in the meaning of the constitution, the corporate authorities of a township, and they could not, as corporate authorities, by statute, create a corporate debt without a legal vote therefor.

The question was there presented, whether these officers were the corporate authority of the township. In that case

there was an effort by the legislature to cure a void election, and to empower the supervisor and town clerk to make the subscription, and it was contended, on the strength of the decision of the case of the *Town of Keithsburg* v. *Frick,* 34 Ill. 420, that the General Assembly had the power to authorize these officers of the township as its corporate authority to make the subscription, without a vote of the people. It was said: "The supervisor and town clerk who issued these bonds do not represent a township as a board of trustees represent an incorporated town, or the common council a city. The supervisor and town clerk are but a part of the corporate authorities. They have no power of taxation, nor power, of themselves, to bind the town in any way. * * * Though elected by the people, they were not elected for the purpose of creating a debt or imposing a tax, and the legislature could not clothe these two officers, without the consent of the people, with a discretionary power of taxation or creating a debt, because they are not, of themselves, the corporate authorities, in the sense of the constitution."

That case is conclusive of this question. We have seen the people had not voted to create a debt or to issue bonds, and the General Assembly had no power to authorize these officers to create a debt, if for no other reason, because they were not corporate authorities. So, no power was conferred to create this debt by a vote of the people, nor by the amendatory act, and the bonds must be held void, (see *Williams* v. *The Town of Roberts,* 88 Ill. 11,) and hence are not binding in the hands of an innocent holder, as he was dealing in municipal securities, and he was bound to see that those issuing them had authority.

The bonds being void, the court below did right in enjoining the collection of the tax for the payment of interest thereon, and the decree must be affirmed.

*Decree affirmed.*