Charles F. Gregg, Administrator of Estate of Robert D. Gregg, Deceased, Appellant, v. Town of Bourbonnais, Appellee.

Gen. No. 10,037.

Heard in this court at the October term, 1945. Opinion filed December 13, 1945. Released for publication December 29, 1945.

AMOS H. ROBILLARD and JOHN H. BECKERS, both of Kankakee, for appellant.

GOWER, GRAY & GOWER, of Kankakee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This case involves the question of the liability of a township to pay for engineering services furnished in the deepening and widening of a creek, and the construction of a swimming pool under two P. W. A. grants, covering a construction period of approximately three years, where the services were furnished without a contract authorized by a vote of the electors at a town meeting, the projects having been initiated by the township supervisor to furnish employment for the unemployed of the township, and sponsored by him. The cause is here on an appeal by the engineer from a judgment of the circuit court of Kankakee county

for $850 in his favor against the township, and a cross-appeal by the township. The plaintiff having died since the filing of the notices of appeal, he is represented by the administrator of his estate.

The complaint consists of three counts, the first of which avers in substance that on February 14, 1936, the plaintiff, a civil engineer, and the defendant, made and entered into an agreement whereby the plaintiff was to furnish .engineering services on a Federal P. W. A. project in deepening and widening Soldier Creek which runs through the township, beginning at the city limits of the City of Kankakee and continuing up the creek, for a distance of 4½ miles, and to furnish all maps, profiles, specifications, and estimates, and to stake out all surveys and work, and to supervise all construction and labor of the project, and that the township was to pay him for such services the sum of $5,500; that the plaintiff then and there entered into such employment and continued therein until January 1939; that during the course of such employment the defendant paid him $800, $300, and $150, totaling $1,250, leaving a balance due under the contract of $4,250.

Count two avers that the defendant requested the plaintiff to do the necessary engineering work on the project, and promised to pay him on request the reasonable value of such services; that such reasonable value is $5,500, concluding with the same allegation of payment of $1,250, and a like *ad damnum* as the first count.

Count three avers the furnishing of engineering services on the project at the request of the defendant, and seeks recovery on a *quantum meruit,* with the same averment of payment of $1,250, and the same *ad damnum.*

. None. of the counts makes any mention of the swimming pool project. The answer of the defendant denies *seriatum* all the material averments of each count, ex-

cept that it admits paying the plaintiff various sums amounting to $1,250, alleged in the first count, but denies making such payment alleged in the third count.

The trial was by the court without a jury. The furnishing of the services by the plaintiff and his qualifications as an engineer are not disputed. The testimony shows that from 1935 to 1939 the township had a population of about 5,000 inhabitants, of which about 3,400 lived in the Village of Bradley, an industrial community. In 1935 there was a large number of unemployed in the township, and the matter of obtaining a Federal grant for a P. W. A. project in order to furnish employment was discussed by the then supervisor and the members of the board, and the Soldier Creek project was decided upon because of its benefits to the northeast part of the township and the Village of Bradley. The former supervisor and the commissioner of highways got in touch with the plaintiff, had several meetings with him, and made an oral arrangement with him for doing the preliminary work. The former supervisor testified that he did not remember that anything was said about pay at the time they started; that under P. W. A. requirements, the project must be a needed and useful one, and must be sponsored by somebody; that when the time came to sign the papers, the commissioner of highways asked him if he would sign, and that they decided that he, the supervisor, should sign as sponsor, and that that was all the authority he had for doing so; that they tried to get the government to pay part of the engineering fee, and a percentage was allowed in the neighborhood of 5 per cent; that the government paid no engineering fees but was to pay 72 per cent of the cost of the project; that the township was to furnish $13,000, and obtained it by a road and bridge bond issue; that during the first two years up to the end of the term of his office as supervisor, the plaintiff was there practically every day, and that as high as 600 men were working

on the project; that the government had an engineer, but that he did no work, except checking the plaintiff's figures. The plaintiff testified that the government was to furnish 85 per cent of the cost, and that to offset it, the township figured in the rock crusher, trucks, drag line, use of materials, and dynamite, all of which was to be a part of the township's proportion of the project.

The Federal government first made a grant of $90,000 for the project of widening and deepening the creek, and later made an additional grant of $60,000 for a swimming pool. The plaintiff furnished engineering services for both projects, which were constructed, during the period mentioned, and his claim includes the services rendered on both projects. It further appears that the supervisor's term of office expired before completion of the projects; and upon the expiration of his term of office his successor was elected.

The former supervisor further testified that the $13,000 road and bridge bond issue was in April 1936, and that the money was used on the Soldier Creek project; that the commissioner of highways wrote the vouchers against that fund; that the plaintiff was to be paid therefrom, and payments from the fund were made to him; that the witness was paid $140 per month out of the fund as superintendent of the project, and that he did not know of any money being paid on the project from the general township fund; that in addition to the proceeds of the $13,000 road and bridge bond issue, there was also used on the project a small amount from the proceeds of another $12,000 road and bridge bond issue, and the proceeds of the sale of some dirt used on the highways.

It further appears from the testimony that about 60,000 yards of crushed stone and some black dirt, excavated from the project, were used on the highways of the township, for which the commissioner of highways did not pay anything; that the stone was not all

placed on the roads by the commissioner of highways and his men, but there were several truck contracts, and the Federal government sometimes allowed five or six trucks to be used for that purpose; and that the commissioner of highways reported on it at each town meeting. The proceeds of the two Federal grants were not disbursed by any township officer, but were paid out under P. W. A. regulations.

The testimony shows that when the project was first started, about 80 per cent of the men employed were residents of the township, and as they went along this percentage decreased to about 60 per cent, and the other 40 per cent of the workmen came from all over the county; and that of the 600 men employed, about 400 resided in the township and about 200 came from Kankakee township and other townships in the county.

The record shows that the township levied the following amounts for poor relief; In 1936, $10,525; in 1937, $7,000; and in 1938, $7,300. The plaintiff testified that when he talked with the former supervisor, there were present the commissioner of highways, Judge ULLOM (a justice of the peace), and Judge DE-SELM; that he told them that in order to help things along he was willing to do the engineering work on a 3½ per cent basis of the total cost; that the source of the township money was the $13,000 bond issue in the beginning; that he was to get $3,000, but to keep the work going they used that too, and he did not get it; that he was paid three instalments totaling $1,250; that the work was finished "around 1929"; that engineering fees for that class of work would run probably $8,000 or $9,000, but that he had cut it down, and there was a balance of $4,250 due him. It further appears from his testimony that covering a ditch installed under a prior P. W. A. project in Kankakee township was also done as a part of the Soldier Creek project. He further testified that $165,000 was spent on the project in Bourbonnais township.

The record also shows that after the payment of the $1,250, the plaintiff presented the board of town auditors with a bill for his services, reduced to $2,100, and that at a meeting of the board it was moved and seconded that the bill be allowed, but the record of the board does not show that any vote was taken on the motion. An effort was made to show that there was a vote and that the motion was carried, but the testimony on this point as a basis for amending the record is not sufficient and is somewhat contradictory. All of this testimony was admitted over the township's objection to its competency, on the ground that there was no showing of liability on its part. The judgment for $850 was based upon the difference between the $2,100 reduced bill and the payments amounting to $1,250.

As to the first count, based upon an alleged express contract between the plaintiff and the defendant, for the sum of $5,500, the only testimony on the question is that of the plaintiff that he told the supervisor, the commissioner of highways, and the other two gentlemen mentioned, that he would be willing to do the engineering work for 3½ per cent of the total cost of the project. There is no testimony that the supervisor, or any of the others present, said or indicated that the proposal was or would be accepted. Furthermore, the first count is based only upon the Soldier Creek project, without any reference to the swimming pool project, which appears to have been a later conceived addition to the first project.

The $90,000 Federal grant and the proceeds of the $13,000 road and bridge bonds, used on the Soldier Creek project, totals $103,000 and 3½ per cent of that sum is $3,605, and not $5,500, the amount alleged in the first count as the contract price. Three and one half per cent of $165,000, which the plaintiff testified was the amount expended on the two projects in the township would be $5,775, which is $275 more than the contract price alleged in the first count. Under all these

facts, even if the supervisor as overseer of the poor, had power to pledge the credit of the township for the benefit of the poor, as claimed by appellant, it is obvious that there can be no recovery under an express contract as alleged in the first count, and there is no testimony to support the allegations of the second count of a promise to pay the reasonable value of the services. This leaves the question of whether there can be a recovery on a *quantum meruit* under the third count.

Appellant contends that the primary object of the projects was for relief of the unemployed of the township, and relies upon the testimony of the supervisor that unless the projects had been initiated and carried out there would have been dire need and distress among them; that the duty of the township and that of the supervisor to take care of such needs and to prevent distress is fixed by law and is mandatory. (Ill. Rev. Stat. 1945, ch. 107, pars. 15.1, 20 [Jones Ill. Stats. Ann. 98.15, 98.22]); that every town has power to sue and be sued, and to make all such contracts as may be necessary in the exercise of the powers of the town, (Ill. Rev. Stat. 1945, ch. 139, par. 38 [Jones Ill. Stats. Ann. 133.038]); that contingent expenses necessarily incurred for the use and benefit of the town are town charges, (Ill. Rev. Stat. 1945, ch. 139, par. 124 [Jones Ill. Stats. Ann. 133.127]); that where authority is given to do a thing, it carries with it, by implication, authority to use the necessary means by which it can be done; that the services rendered by the plaintiff were but an incident in the general effort to give relief, and for that reason, the doctrine that a town cannot become liable except by a contract through its electors at a town meeting does not apply; that a township may become liable on an implied contract; that if there are no funds in the treasury to pay for support of the poor, the overseer must of necessity, have power to pledge the credit of the town in that behalf; that the

liability of the town is not dependent upon an audit of the claim by the board of town auditors, and that where power is expressly granted to a municipality to do a thing and the power is exercised in a manner different than the statute provides and the municipality has received benefits therefor it is estopped to question the legality of the contract.

Appellee and cross appellant takes the position that there is no officer or board representing the corporate authorities of a town, and the electors alone represent it and they can do so only through town meetings; that there is no implied authority in the supervisor or the town auditors to represent the town in its corporate authority; that the town cannot become liable by way of estoppel where the claim is unauthorized and illegal; that the supervisor has no authority to pay any claim until the board of town auditors has audited, allowed and certified the claim; that action cannot be maintained on claims not so audited, allowed and certified; that the supervisor cannot contract an obligation against the town before it is audited and allowed; that the plaintiff knew, or should have known, that the approval of the electors was a condition precedent to the validity of a contract for his services; that statutes granting powers to municipal corporations must be strictly construed, and any fair and reasonable doubt of the existence of a power is resolved against the municipality; that persons dealing with a township must see that such township has power to perform; that incurring debts is not incident to the existence of a quasi municipal corporation, and cannot be exercised unless conferred by law; and that the power of the overseer of the poor to pledge the credit of the town for poor relief extends only to the relief of indigent residents of his town and then only in cases where direct prompt relief is imperative.

There is no testimony which shows that any, or what portion, of the residents of the township employed on

the projects would otherwise have been unemployed, and the record shows that from 20 per cent to 40 per cent of the workmen came from outside the township. Of course, as contended by appellant, the plaintiff had no control of such matters, but when recovery for his own services is sought under and by virtue of the Poor Relief Act, it is incumbent upon the plaintiff to show that his services came within the terms of that Act. If it be conceded that the evidence fairly tends to show that those residents of the township employed on the work would otherwise have been without employment, there still remains the question of whether those sections of the statute and the principles of law relied upon by appellant furnish a basis for recovery in this case.

Section 18 of the Act for relief of the poor and indigent, (Ill. Rev. Stat. 1945, ch. 107, par. 18a [Jones Ill. Stats. Ann. 98.20]) provides that in counties under township organization the supervisors of the respective towns shall be *ex officio* overseers of the poor of their towns, and section 20 [98.22] of the Act provides that the overseers of the poor shall receive and pay out all moneys raised by taxes for support of the poor and indigent, "and shall see that they are suitably relieved, supported and employed, subject to such restrictions and regulations as may be prescribed by the . . . board of town auditors, . . . as the case may be. No indebtedness shall be incurred by the overseers of the poor in excess of taxes for this purpose levied and uncollected or for the payment of which funds are not currently available without the consent of the . . . board of town auditors . . . as the case may be."

Section 2 of article 4 of the Township Organization Act, (Ill. Rev. Stat. 1945, ch. 139, par. 38 [Jones Ill. Stats. Ann. 133.038]), provides: "Every town shall have corporate capacity to exercise the powers granted thereto, or necessarily implied, and no

others''; and ''to make all such contracts as may be necessary in the exercise of the powers of the town.'' Paragraph 124 [133.127] of the same Act provides that contingent expenses necessarily incurred for the use and benefit of the town are town charges. These sections are relied upon by appellant, and it is urged that such authority carries with it, by implication, authority to use the necessary means by which it can be done. He loses sight of the fact that these powers of the township, as such, are a wholly different thing from the powers of the supervisor as overseer of the poor to provide relief, which, by the express terms of sec. 20 of the Poor Relief Act, are to be exercised subject to such restrictions and regulations as are prescribed by the board of town auditors, and the indebtedness which a supervisor may contract for such purposes, without the consent of the board of town auditors, cannot be in excess of the taxes levied and uncollected and funds currently available.

There is one well defined exception to the provisions of sec. 20 of the Poor Relief Act, expounded in *Town of Kankakee v. McGrew,* 178 Ill. 74. In that case there was a suit on demands against the township on account of fuel and other supplies furnished to poor and indigent persons of the township under orders of the supervisor, when there was no money in the treasury and no tax in process of collection. In upholding the plaintiff's right to recover, after referring to those provisions of the Poor Relief Act imposing upon relatives of the unfortunate the duty to provide them with support, and the duty of the State's attorney to enforce compliance therewith, the court said in the opinion: ''The necessities of the unfortunate class designed to be relieved by the law do not, however, admit of delay. Pain and suffering must be relieved; food, fuel, clothing and shelter must be furnished to those in need; the dead must be buried. Prompt relief is imperative, and the overseer of the poor may not

await the action of the State's attorney and the termination of proceedings in court, but, as the representative of the town, must care for those who are so unfortunate as to be entitled to assistance from the public.'' It was further held that if there be no funds for the purpose, the overseer must, of necessity, have power to pledge the credit of the town in that behalf, and may procure supplies for such poor persons from merchants, grocers and tradesmen.

This decision was cited with approval in *People v. Reiter,* 377 Ill. 27, 30, in a case where medical and surgical relief was furnished on orders of the supervisor, and the court pointed out in its opinion that the services were furnished in emergency cases.

These two cases, and other cases having no direct bearing on the question, are relied upon by appellant. They manifestly apply only to current cases of need when there is no money on hand and no tax in process of collection, and it is plain that the Supreme Court meant to go no further than that in either of them. By no stretch of the imagination can they be applied to a case where services are furnished by an engineer on two projects undertaken by an outside agency, which in the natural course of events would and did stretch over a period of approximately three years, and beyond the supervisor's term of office. There is a vast difference between incurring an indebtedness of the township for current support of the poor, and in imposing a liability upon the township for several thousand dollars for engineering services on projects that extend over a period of years. To hold otherwise would nullify the provisions of sec. 20 of the Poor Relief Act.

There was at common law no obligation upon any governmental unit to support the poor and destitute. The extent of relief granted and the circumstances incident thereto, such as the place and agencies by which poor persons shall be relieved at the expense

of the public are primarily and essentially a legislative function, and it is the duty of the courts to give effect to the intention expressed by the legislature. (*People v. Lyons,* 374 Ill. 557, 562, 563.)

This is not a case of a delegated power being defectively exercised in a manner different from that authorized by the statute. The allowance by the Federal government of about 5 per cent for engineering fees as an item of cost, cannot be interpreted as a contract between the plaintiff and the supervisor, but even if the supervisor had contracted with the plaintiff that he would be paid for his services, which the evidence does not show, it would have been an attempt to exercise a power not possessed by him, and therefore ultra vires. The supervisor and town clerk are not the corporate authorities of a township, (*Schaeffer v. Bonham,* 95 Ill. 368, 382). Under our system of township organization there is no officer or board properly representing the corporate authorities of the town, but the electors represent the corporate authorities when assembled in town meeting. (*People v. Knopf,* 171 Ill. 191, 200; *Town of Kankakee v. Kankakee & I. R. Co.,* 115 Ill. 88.) It is not claimed that the alleged liability of the town is based upon any such meeting, which is the only way that a township may enter into such a contract. There was thus an entire lack of authority from the township for the furnishing of any engineering services. If the electors at a town meeting had voted to contract with the plaintiff for his services, and if the contract had been defectively executed on behalf of the township, then the doctrine of estoppel invoked by appellant might be applied, but no such situation obtains here, and the doctrine of estoppel has no application. (*Schaeffer v. Bonham, supra,* p. 381.) Cases relied upon by appellant, where the proper authorities ordered the work done (*Hall v. County of Cook,* 359 Ill. 528, 545); or a purchase to be made, (*Stripe v. Yager,* 348 Ill. 362, 368), or en-

tered into a contract, (*City of East St. Louis v. East St. Louis Gaslight & Coke Co.*, 98 Ill. 415, 418), are not applicable under the doctrine of estoppel. Neither are they in point under the claim that a municipality may become liable by implication, because in the case at bar the proper authorities took no such action as in the cases mentioned.

The claim that the township is liable, by implication, on a *quantum meruit,* because the services were requested, is equally untenable. The plaintiff testified that after and pursuant to the government's approval of the items of rock-crusher, trucks, dragline, etc., to be furnished by the township on the project, as above mentioned, he was requested to do the engineering work on the project; that he was told that he had to prepare four sets of maps, profiles, specifications and estimates, which he prepared and gave to the supervisor, who sent them to Washington for approval; and that he, the plaintiff, received orders from Washington. This testimony does not disclose who requested him to do the engineering work. The only showing of a request by the supervisor is the arrangement between the supervisor, the commissioner of highways and the plaintiff for doing the preliminary work. Manifestly the commissioner of highways had no power to make any such request, even for preliminary services. Even if the supervisor had power to arrange for preliminary engineering services on a, project of the character, magnitude and extent shown by the record, which, in our opinion he did not have, it is not shown or claimed that the $1,250 paid the plaintiff was not adequate compensation for such preliminary services. Even if it can be implied from the plaintiff's testimony that the request he mentioned was made by the supervisor, certainly the supervisor had no power to make such request. There having been no request by any authorized person for the serv-

ices, the claim of liability on account of a request, has no foundation.

 Incurring debts is not an incident to the corporate existence of corporations of this character, and cannot be exercised unless conferred upon them by law, and persons dealing with them must see that they have power to perform. (*City of Danville v. Danville Water Co.*, 178 Ill. 299, 307; *Law v. People ex rel. Huck*, 87 Ill. 385, 394.)

If a township is liable on a *quantum meruit* for services furnished by a person over a period of three years, without being authorized to do so in some method prescribed by the statute, on the theory that the services were of some benefit to the needy inhabitants, then the provisions of the statutes prescribing and limiting the manner in which the township can become indebted are meaningless. The rule is that a party dealing with such corporations must take notice of such limitations, and, in order to recover, must bring himself within them. We are of the opinion that under the law and the evidence in this case there can be no recovery from the township on account of the services furnished by the plaintiff. In view of this conclusion it is unnecessary to discuss other contentions urged by the parties.

The judgment of the circuit court is reversed and the cause remanded with directions to enter judgment in favor of the Town of Bourbonnais.

*Reversed and remanded with directions.*